James HAUG, Judy Haug, Wilmer B. Flasch, Gerald L. Thielke, Norbert R. Rosenbeck, Bud H. Reth, Paula Leinter, Dale A. Geib, Robert Flasch, Joan F. Slavik, Noel H. Snyder and Roan Albert, Plaintiffs-Appellants,

v.

WALLACE LAKE SANITARY DISTRICT, a political subdivision of the Town of Trenton and The Town of Trenton, a political subdivision of the State of Wisconsin, Defendants-Respondents.

Court of Appeals

*No. 85–1321. Submitted on briefs February 6, 1986.— Decided March 27, 1986.*

(Also reported in 387 N.W.2d 133.)

For the plaintiffs-appellants, the cause was submitted on the brief of *Ronald J. Roensch,* attorney at law of West Bend.

For the defendants-respondents, the cause was submitted on the briefs of *Harold H. Fuhrman* of Milwaukee and *Daniel L. Sargeant* of *Seefeldt & Spella, S.C.* of West Bend.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.    The appellants brought a declaratory judgement action seeking a determination that the Wallace Lake Sanitary District or the Town of Trenton, or both, have the authority to redefine the physical boundaries of the Sanitary District. The circuit court concluded, correctly we hold, that neither entity has such power under the statutes.[1] The only

---

[1] The circuit court's judgment was entered on June 11, 1985, following its issuance of a memorandum decision dated March 27, 1985 which cited the 1981–82 statutes. However, effective January 1, 1985, ch. 60, Stats., was repealed and recreated by 1983 Wis. Act

means to such an end authorized by the legislature is the dissolution of the District and the creation of a new sanitary district, upon the filing of the proper petitions.

James Haug and the other appellants are landowners within the borders of Wallace Lake Sanitary District, created by the Town of Trenton in 1970.[2] The District was formed pursuant to ch. 60, Stats., upon the petition of more than one hundred landowners who claimed that Wallace Lake and surrounding areas had become polluted and unsanitary by the unregulated disposal of surface waters, sewage and garbage.

The appellants did not seek review of the town board's action within twenty days of the District's establishment, as provided in sec. 60.304, Stats. (1969).[3] Their right to contest that establishment is now barred. *See id.*

In 1984 a sanitary sewer system was constructed which provides service to only a part of the District. Haug contends that he and the other appellants have been assessed annually by the District but receive no service. He asserts that there presently exists neither a definite plan to extend service to all members of the

532. The changes made by 1983 Act 532 to the statute sections relevant here were not, for the most part, substantive. We therefore cited primarily to the 1983–84 statutes, but cross-reference the 1981–82 statutes by footnote.

[2] The District actually lies within both the towns of Trenton and Barton. Section 60.71(1)(b) (former sec. 60.301), Stats., governs which town shall have jurisdiction to establish a proposed town sanitary district which lies in more than one town.

[3] Effective July 1, 1980, review of the establishment of a sanitary district may be taken within ninety days of the town board's action, pursuant to secs. 60.73 (former sec. 60.304) and 893.73(2)(a), Stats.

District nor even a forecast of when such an extension might occur.

Haug requested both the District and the Town of Trenton to redefine the District's boundaries to exclude areas or residents who are not benefiting from the sewer system. The governing bodies of both entities denied the request, believing they lacked authority to redefine the District's boundaries. The circuit court agreed that neither the District nor the Town has express or inherent authority to redefine the District's boundaries.

A town sanitary district organized pursuant to ch. 60, Stats., has only the powers set forth in that chapter. *Wisconsin Gas Co. v. Craig D. Lawrenz & Associates, Inc.,* 72 Wis. 2d 389, 393, 241 N.W.2d 384, 387 (1976). Similarly, a town is a creature of the legislature, having only the powers delegated to it by statute. *Adamczyk v. Town of Caledonia,* 52 Wis. 2d 270, 273, 190 N.W.2d 137, 138–39 (1971). The powers deemed to be delegated are those expressly delegated and such others as are necessary to implement the powers expressly granted. *Schroeder v. City of Clintonville,* 90 Wis. 2d 457, 464–65, 280 N.W.2d 166, 169 (1979).

The determination of what powers are expressly or necessarily delegated presents a question of statutory interpretation. The issue is therefore one of law which we review *de novo* without deference to the circuit court's ruling. *Hainz v. Shopko Stores, Inc.,* 121 Wis. 2d 168, 172, 359 N.W.2d 397, 400 (Ct. App. 1984).

We first address whether the District has the authority to decrease its own boundaries once they are created.

Haug concedes that ch. 60, Stats., provides no such express authority. He contends that inherent authority is granted in sec. 60.77(1), Stats.,[4] which states: "The [sanitary district] commission has charge of all affairs of the town sanitary district." We join the circuit court in rejecting this interpretation.

In interpreting a section of the statutes, the entire section and related sections are to be considered; likewise, in determining the meaning of a phrase in a statute it is necessary to construe it in the light of the whole statute. *Plachta v. Plachta,* 118 Wis. 2d 329, 332, 348 N.W.2d 193, 195 (Ct. App. 1984).

First, a plain reading of "all the affairs of the town sanitary district" does not imply the authority to redraw the District's boundaries. Rather, we agree with the circuit court that the language means the authority to manage the District's day-to-day business.

Even if, standing alone, the declaration "the commission has charge of all the affairs of the . . . district" is ambiguous, we find in light of the statute, as a whole, there is no evidence that the legislature intended it to be construed as the broad grant of power urged by Haug. This is because elsewhere in ch. 60, Stats., town sanitary district commissions are given express authority relating to additions to and consolidation of districts. *See* sec. 60.785(1)(b) [5] and (2), [6] Stats. Therefore, if the legislature felt it necessary to give express authority to add and consolidate, we are hard pressed to say that it would then give a more general authority to alter a district under sec. 60.77(1), Stats.

---

[4] Former sec. 60.306(1), Stats.

[5] Former secs. 60.303(8) and 60.315(8), Stats.

[6] Former sec. 60.303(9), Stats.

Applying the maxim *expressio unius est exclusio alterius,* the fact that the legislature expressly gave district commissions certain powers relating to some means of district alteration, *i.e.,* additions and consolidations, leads us to conclude that it chose not to grant commissions powers relating to other means of alteration. This conclusion is buttressed by the fact that ch. 60, Stats., formerly allowed additions *and* alterations to a sanitary district to be made in the manner provided for the creation of such a district. Section 60.303(8), Stats. (1957). By ch. 588, Laws of 1959, all reference to voluntary alteration of districts was deleted.[7] We therefore affirm the circuit court's ruling that the District has no authority to redefine its own boundaries to exclude the appellants.

We note that Haug has urged us to liberally interpret the commissioner's powers of management to avoid the hardship and absurdity that he claims would result from a ruling that landowners may be forever "imprisoned" within a sanitary district without the provision or the likelihood of eventual provision of any services.

This argument ignores the legislative safeguards against such "imprisonment." In establishing a sanitary district, the town board must find that the property to be included in the district will be benefited by the district and shall exclude from the district any ter-

---

[7] Section 60.79 (former sec. 60.31), Stats., entitled "Alteration of town sanitary districts" does not deal with voluntary alteration of a district but makes provisions in the event that all or part of the territory of a district is incorporated or annexed by a city or village.

ritory it finds will not be benefited.[8] Section 60.71(6)(b) and (d), Stats.[9] Persons aggrieved by the town board's action have a right of review. Section 60.73, Stats. Procedures for dissolution of an existing district are provided upon an allegation and subsequent town board finding that one or more of the standards of sec. 60.71(6)(b) are not met. Section 60.785(3), Stats. Thus, no absurdity or undue hardship results from the legislative scheme.

■

Having addressed Haug's arguments concerning the District, we next discuss his assertions concerning the Town's authority to redefine the boundaries of the District. We conclude it has none. Our analysis is similar to that employed above regarding the authority of sanitary districts. There is no express delegation of the power to redefine a district to exclude certain property. Certain specific authority relating to other types of alteration is expressly granted. *See* sec. 60.785(1) [10] and (3), [11] Stats. Following our reasoning above, we con-

---

[8] We note, however, that it is not up to individual landowners to determine whether or not they are benefited by the district. "Benefit" refers generally to promotion of public health, comfort, convenience, necessity and welfare, and may reasonably be found to exist where property is within the same watershed and proposed improvements *may* serve it. *Fort Howard Paper Co. v. Fox River Heights Sanitary District,* 250 Wis. 145, 152, 26 N.W.2d 661, 665 (1947). We cannot say as a matter of law that appellants are not benefited by the District simply because they do not presently receive sewer service.

[9] Former sec. 60.303(3) and (6), Stats.

[10] Former Secs. 60.303(8) and 60.315(8), Stats.

[11] Former sec. 60.316, Stats.

clude that the Town has no authority to redefine the District's boundaries.

■

Haug asserts that the Town has the power to dissolve the District pursuant to sec. 60.785(3), Stats., and create a new sanitary district with different boundaries. He is correct that towns have the power to dissolve districts. However, dissolution requires the same procedure as creating a sanitary district under sec. 60.71, Stats. Section 60.785(3)(a). [12] There must be a petition, signed by at least fifty-one percent of a district's landowners or the owners of at least fifty-one percent of the land within the district, stating why the district does not meet the standards of sec. 60.71(6)(b), followed by a hearing and fact-finding by a town board. Sections 60.785(3)(a) and 60.71. [13] There is no evidence that in

---

[12] Former sec. 60.316, Stats., required a procedure "similar to" that by which the district was created.

We reject the Town of Trenton's argument that a district lying within two towns may only be dissolved upon creation of a utility district under sec. 66.072(5)(a) and (c), Stats. That statute provides for dissolution in such circumstances but by no means provides that only in such circumstances may dissolution occur.

[13] Haug urges us to find that former sec. 60.316, Stats., provided that upon request by ten percent of the District's property owners the town must review the District to determine whether any residents should be excluded from the District. We reject such an interpretation. The review proceedings authorized by former sec. 60.316 were allowed *after* dissolution of a district pursuant to procedures similar to those by which the district was created. Section 60.316, which first provided for dissolution and then stated that "[r]eview proceedings, similar to those that may be utilized *following* creation of a district, may be initiated" (emphasis added), clearly meant to analogize review of a town's dissolution of a sani-

the present case such a petition for dissolution was ever filed.

*By the Court.*—Judgment affirmed.

tary district to review of a town's establishment of such a district under former sec. 60.304, Stats. It was the town's action which gave rise to the right of review.

New sec. 60.785(3)(c), Stats., removes any ambiguity on this issue by making clear that it is the town board's order for dissolution which may be reviewed.