Beryl BISHOP, Jackie Busch, Peter Busch and Joanne Bishop, Plaintiffs-Appellants,†

Mary BRENSINGER and Wayne Johnson, Plaintiffs,

v.

CITY OF BURLINGTON, Wisconsin, Jeannie Hefty and Kevin McKillip, Defendants-Respondents.

Court of Appeals

*No. 00–2346. Submitted on briefs April 20, 2001.—Decided June 27, 2001.*

## 2001 WI App 154

(Also reported in 631 N.W.2d 656.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Robert E. Hankel* of *Knuteson, Powers & Wheeler, S.C.* of Racine.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Michael J. Cieslewicz* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

Before Brown, P.J., Nettesheim and Anderson, JJ.

¶ 1. BROWN, P.J. Several business owners and residents of the City of Burlington, referred to collectively as taxpayers, appeal from a judgment in favor of the City. The taxpayers seek to avoid the conveyance of a parking lot from the City to Kevin McKillip, a private citizen. The taxpayers raise three issues on appeal: (1) whether the conveyance is illegal for failure to follow statutory procedures, (2) whether the conveyance violates the public purpose doctrine, and (3) whether the conveyance is a misuse of discretion. We decline to address the merits of the first issue for reasons dis-

cussed below. We affirm the trial court on the second and third issues.

## FACTS

¶ 2. The parking lot at issue is located in the heart of downtown Burlington. It is adjacent to the Commerce Building which was recently purchased from the City by McKillip. McKillip is a local real estate developer who is redeveloping the Commerce Building for commercial use. In line with this redevelopment project, McKillip sought to have the municipal parking lot conveyed to him for the use of business tenants in the Commerce Building.

¶ 3. The negotiations between McKillip and the City occurred in the context of a revitalization of downtown Burlington. The City had in effect a redevelopment plan to increase the economic vitality of the City and to enhance the retail and entertainment districts of the downtown area. Another component of the redevelopment plan was to make comprehensive transportation improvements with respect to vehicle and train traffic in the City. The Commerce Building is located within a blighted area as designated pursuant to the urban redevelopment and renewal statute.[1] It is also located in the tax incremental district (TIF district) of Burlington.[2] On September 1, 1998, the city council approved the conveyance of the parking lot to

[1] See WIS. STAT. § 66.1331(2) (1999–2000). All references to the Wisconsin Statutes are to the 1999–2000 version.

[2] According to the testimony of Mark Fitzgerald, city administrator, TIF districts constitute the principal financing mechanism for redevelopment. Essentially, when land is improved in the TIF district, whatever tax revenue is generated by the improvement is used to pay for infrastructure improvements within the district.

McKillip. The substance of the agreement between McKillip and the City is contained in the initial conveyance agreement, executed September 18, 1998, and the amended and restated conveyance agreement, executed March 2, 1999.

¶ 4. McKillip did not provide monetary consideration in exchange for the parking lot, but he did undertake the following obligations as set forth in the initial and restated conveyance agreements: rehabilitation of the Commerce Building and upgrade of the parking lot, conveyance to the City of a parcel situated between a railroad right-of-way and the White River for park use, and a promise to maintain the parking lot as a public facility for three years and as a parking lot for ten years after the date of conveyance. More details regarding McKillip's obligations under the agreements will be described later in the opinion.

¶ 5. On July 7, 2000, on motions for summary judgment, the trial court dismissed individual defendants Jeannie Hefty, mayor of Burlington, and McKillip.[3] The trial court denied summary judgment to the City because of a factual dispute concerning the value of the parking lot. Following testimony in the trial on the same day, the trial court determined that the conveyance was not a misuse of discretion because there was adequate consideration. The trial court also held that the benefits inuring to the general public from the conveyance satisfied the public purpose doctrine even though the parking lot itself would no longer serve the public after three years.

---

[3] The taxpayers appeal the dismissal of McKillip on the basis that he is a necessary party. Our disposition of this case renders this issue moot.

¶ 6. In order for the court to void the sale, the taxpayers must establish illegality, fraud or clear misuse of discretion on the part of the City. *Rath v. Two Rivers Cmty. Hosp., Inc.*, 160 Wis. 2d 853, 859, 467 N.W.2d 150 (Ct. App. 1991). Whether a set of facts fulfills a particular legal standard—in this case, misuse of discretion—is a question of law. *Nottelson v. DILHR*, 94 Wis. 2d 106, 115–16, 287 N.W.2d 763 (1980). In addition, whether a particular act is for a public purpose is a matter of law. *Hopper v. City of Madison*, 79 Wis. 2d 120, 127, 256 N.W.2d 139 (1977).

¶ 7. The taxpayers make no claim of fraud relating to the conveyance, nor could they based upon the record before us. However, they raise two claims of illegality which were not presented to the trial court. First, the taxpayers argue that the conveyance is illegal because of the City's failure to follow the notice requirements of WIS. STAT. § 840.11(1). The record shows that this issue was not addressed. The taxpayers' failure to present this issue or offer any evidence regarding it to the trial court waives the right to raise this issue on appeal. *Kulekowskis v. Bankers Life & Cas. Co.*, 209 Wis. 2d 324, 335, 563 N.W.2d 533 (Ct. App. 1997).

¶ 8. Second, the taxpayers argue that the City failed to submit this matter to the planning commission for its approval. They contend planning commission approval is required by WIS. STAT. § 62.23(5). *See Scanlon v. City of Menasha*, 16 Wis. 2d 437, 444, 114 N.W.2d 791 (1962). The record demonstrates that counsel for the taxpayers did refer to the *Scanlon* case in his oral argument before the trial

court. However, counsel cited to the case for support on the issue of adequacy of consideration, not illegality for failing to comply with § 62.23(5). Also, while some testimony alluded to the supposition that the planning commission had not been involved in approval of the conveyance, the taxpayers never raised this particular point as grounds for challenging the matter. A litigant must raise an issue with sufficient prominence such that the trial court understands that it is being called upon to make a ruling. *State v. Salter*, 118 Wis. 2d 67, 79, 346 N.W.2d 318 (Ct. App. 1984). The taxpayers never raised the issue of failure to comply with § 62.23(5) with prominence, which undoubtedly explains why the trial court opinion does not address this issue.

¶ 9. Nevertheless, the taxpayers argue we should address the issue of illegality in the interest of justice and to ensure that the real controversy has been fully tried. WIS. STAT. § 752.35. We are convinced that the real controversy concerning the conveyance of the parking lot was fully tried by the trial court. We are also convinced that the interests of justice in this case do not require us to overlook waiver. This leaves only the questions of whether the conveyance by the City violates the public purpose doctrine and whether it is a misuse of discretion for failure of consideration.

## THE PUBLIC PURPOSE DOCTRINE

¶ 10. The public purpose doctrine is well established in Wisconsin, although its constitutional genesis is somewhat obscure. *State ex rel. Bowman v. Barczak*, 34 Wis. 2d 57, 62, 148 N.W.2d 683 (1967). The essence of the doctrine, that public funds may be expended only

889

for public purposes, rests on the theory that governmental power should be used for the benefit of the entire community. *Id.* at 62–63. To maintain a public purpose, the benefit to the public must be direct and not remote. *Id.* at 64. The fact that a private entity receives direct benefit from an expenditure of public funds does not render the expenditure unconstitutional. If the principal parts of the expenditure are designed to promote a public purpose, private benefits which are necessary and reasonable to the main purpose are permissible. *Hopper*, 79 Wis. 2d at 129.

¶ 11. The public purpose doctrine applies to municipalities. *Id.* at 128. What constitutes a public purpose is a question for the legislature, in this case, the city council, to determine and its opinion should be given great weight. *Id.* If any public purpose can be conceived which might rationally justify the expenditure, the constitutional test is satisfied. *State ex rel. Warren v. Nusbaum*, 59 Wis. 2d 391, 414, 208 N.W.2d 780 (1973). We will conclude that no public purpose exists only if it is clear and palpable that there can be no benefit to the public. *Id.*

¶ 12. We also observe the judicial trend to extend the scope of activities considered to be valid public purposes. *See State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis. 2d 32, 55–56, 205 N.W.2d 784 (1973). "[W]hat could not be deemed a public use a century ago, may, because of changed economic and industrial conditions, be such today." *Bowman*, 34 Wis. 2d at 65 (citation omitted).

¶ 13. With these principles in mind, we address the taxpayers' contention that the conveyance of the parking lot violates the public purpose doctrine. We start with the premise that WIS. STAT. § 62.22(1) autho-

rizes the City to convey the parking lot at issue.[4] This section vests considerable discretionary power in the city council; there is no requirement that it either solicit bids or sell to the highest bidder. *Hermann v. City of Lake Mills*, 275 Wis. 537, 540, 82 N.W.2d 167 (1957).

¶ 14. In this case, the taxpayers do not argue that the public purpose doctrine prohibits the conveyance of public land to a private entity. Rather, they argue that the public purpose doctrine requires that public property be devoted to public purposes even after it has been conveyed to the private sector. Relying on *Rath* and *Hermann*, the taxpayers contend that this conveyance fails because it permanently removes the parking lot from public use after three years.

¶ 15. Like this case, *Hermann* involved the conveyance of a public parking lot to a private entity. The taxpayers contended that the conveyance lacked adequate consideration, in effect comprising a gift of municipal property to the private party, with an under-lying motive to promote the industrial growth of the city. *Hermann*, 275 Wis. at 541. The court acknowledged the tenet that a city may not make a gift of municipal property to an industrial corporation for the purpose of aiding the industrial development of the community. *Id.* "It necessarily follows that a transfer of

---

[4] WISCONSIN STAT. § 62.22(1) provides in relevant part:

The governing body of any city may by gift, purchase or condemnation acquire property, real or personal, within or outside the city, for parks, recreation, water systems, sewage or waste disposal, airports or approaches thereto, cemeteries, vehicle parking areas, and for any other public purpose; may acquire real property within or contiguous to the city, by means other than condemnation, for industrial sites; may improve and beautify the same; may construct, own, lease and maintain buildings on such property for public purposes; and may sell and convey such property.

municipal property to a manufacturing corporation in return for a payment representing only part of the fair market value of the property, which is knowingly made for the purpose of promoting industrial expansion, is equally beyond the power of the municipality." *Id.* at 542.

¶ 16. With respect to the public parking lot, the *Hermann* court noted that it would not hesitate to uphold the conveyance if it had included a binding commitment on the part of the private corporation to maintain a portion of the lot for public parking. *Id.* However, in that case, "the purchaser did not intend to extend parking privileges to the general public but only its own employees. To provide parking space for the employees of a specific industry and not the general public serves a private rather than a public purpose." *Id.* at 543.

¶ 17. In *Rath,* the City conveyed a hospital to a nonprofit corporation without any monetary consideration. *Rath,* 160 Wis. 2d at 857. The deed contained a restriction that the hospital would revert back to the City if it ceased to be used for the health care needs of the community. *Id.* at 862. The court concluded that the restrictive language in the deed created a binding commitment to use the property for a public purpose. *Id.* at 865 (citing *Hermann,* 275 Wis. at 542–43). It further determined that the binding commitment also provided adequate consideration.

¶ 18. We discern from the above discussion that a binding commitment by a private entity to use property for the public benefit is a reasonable, but not exclusive, means to safeguard that benefit. *See Rath,* 160 Wis. 2d at 862 ("The only safeguards required are those safeguards reasonably necessary under the circumstances

to attain the public purpose."). As long as the agreement contains adequate controls to maximize the likelihood that the City's public purpose will be fulfilled, the constitutional concerns will be satisfied. Certainly, the public purpose doctrine does not require, in every case where public property is conveyed to the private sector, that public use be reserved for perpetuity. *See State ex rel. Tomasic v. Kansas City*, 701 P.2d 1314, 1334 (Kan. 1985) (upholding transfer of municipal property to private buyer in exchange for cash payment and economic benefits expected to flow from buyer's presence in the municipality).

■■■

¶ 19. Furthermore, we interpret *Hermann* to prohibit the use of public funds to promote the expansion of a particular industry. In that case, the purchaser offered a below-market price for a parcel that the City had already improved. *Hermann*, 275 Wis. at 543. In addition to taking over the parking lot, the purchaser intended to erect an office and engineering building as an expansion of its manufacturing operations already located in Lake Mills. *Id.* at 539. The court could see no larger public benefit conferred on the City other than the cash payment. *Id.* at 542–43. As such, the court viewed the conveyance as an attempt to aid a particular industry to expand its operations and, therefore, it served a private rather than public purpose.

¶ 20. We are presented with entirely different facts in this case because it is clear that the City had no motive to aid in the expansion of McKillip's business or industry in general. The City was driven instead by its predominant goal of implementing the redevelopment of a deteriorating section of the downtown. The key to this case, therefore, is not whether the parking lot will

continue to be accessible to the public, but whether the agreement confers a direct public benefit and contains adequate controls to insure the likelihood that the public benefit will be accomplished.

¶ 21. Our review of the record discloses that the purpose of the conveyance was to promote the rehabilitation of downtown Burlington. The rehabilitation of deteriorating public facilities is a legitimate public purpose. *Bryant v. City of Atlantic City*, 707 A.2d 1072, 1080–81 (N.J. Super. Ct. App. Div. 1998). The taxpayers point out that the conveyance did not proceed through WIS. STAT. ch. 66; nonetheless, it is clear that carrying out the redevelopment plan was the City's main purpose in conveying the parking lot to McKillip. The Community Redevelopment Authority sanctioned the conveyance as part of the overall redevelopment of the Commerce Building undertaken by McKillip. The point man for the negotiation of the Commerce Building and the parking lot, Mark Fitzgerald, testified that the City "considered [the building] to be a threshold building in terms of the redevelopment because of its size and prominent location."

¶ 22. Moreover, the terms of the initial and restated conveyance agreements reveal that the benefits to be conferred on the public would accomplish many of the City's immediate and long-term goals for revitalization of downtown Burlington. As a condition precedent to the conveyance of the parking lot, McKillip was obligated to rehabilitate both the facade of the Commerce Building and the first floor. This condition provided a safeguard for the public benefit, ensuring that the public would reap the visual and economic benefits of a prominent redeveloped building before the City would convey the parking lot. Furthermore, the combining of the Commerce Building and parking lot

into a single tax parcel has generated increased tax revenue for the City which can be used for further redevelopment.[5] In addition, the City reserved a portion of the parking lot to widen the radius of the intersection and also required McKillip to close an entrance to the lot, both in conformance with the City's goal to improve vehicular traffic in the downtown area.

¶ 23. Cognizant of the acute need for municipal parking, the City required McKillip to maintain the parking lot as a public facility for three years and as a parking lot for ten years after the date of the conveyance. The restated agreement clarifies that within the three-year time frame the City would implement its plan to construct a new, larger lot across from the Commerce Building. The new lot would be funded in part by tax revenue generated by the TIF district. The record indicates that construction of this new lot is underway.

¶ 24. McKillip also conveyed to the City a riverfront parcel of land located behind the Commerce Building between the White River and a railroad right-of-way. The taxpayers contend this parcel has zero market value because it is submerged much of the year by the river and cannot be developed as an economic unit. The record shows otherwise. This parcel closes a gap between other parcels owned by the City and, according to Fitzgerald, is a fundamental piece of the riverfront walkway plaza planned for that area. The City considers this riverfront redevelopment project to be a "major, major attribute for the downtown."

¶ 25. We are mindful that in reviewing the public purpose of a conveyance, the benefits must be direct and not remote and safeguards must be in place to

---

[5] Fitzgerald projected that McKillip's redeveloped parcel will generate over $100,000 of additional tax increment for Burlington.

ensure that the benefit is accomplished. With this conveyance, the City gains entire control of the instant riverfront so that it can develop a plaza. It is therefore a significant and direct benefit to the citizens of Burlington. *See Northlake Marine Works, Inc. v. City of Seattle*, 857 P.2d 283, 294 (Wash. Ct. App. 1993) (upholding transfer of municipal property where city conveyed abandoned right-of-way to private party in exchange for perpetual easement for construction of a trail).

¶ 26. Given the recitation of the above public benefits, we cannot conclude that the main purpose of this transaction was to confer a private benefit or aid the industrial expansion of the community. We determine the primary purpose of the conveyance was to further the redevelopment of a blighted section of downtown Burlington. McKillip's investment in the Commerce Building and adjacent parking lot conferred significant, direct benefits to Burlington by enhancing traffic flow and stimulating the economic vitality of the downtown. The riverfront parcel will contribute to the City's long-term goal of developing a walkway plaza. While we recognize that McKillip will eventually enjoy the private use of the parking lot and its enhanced resale value, this private benefit does not deprive the conveyance of its public purpose.

## MISUSE OF DISCRETION

¶ 27. The taxpayers argue that the City misused its discretion by making a gift of a public parcel for the private benefit of McKillip. This presents an issue of adequacy of consideration. The trial court heard testimony on the fair market value of the parking lot from a

city assessor and from an appraiser hired by the taxpayers. The taxpayers' appraiser believed the lot to be valued at $218,000, while the City believed the lot was worth about $25,000. The trial judge found the testimony of the city assessor to be more credible. We defer to factual findings of the trial judge unless they are clearly erroneous.

¶ 28. In addition, we concur with the view held by courts in other states that it is proper, when determining the adequacy of consideration for transfers of public property to private entities, to evaluate the entire transaction as a whole. *Tomasic,* 701 P.2d at 1334. The consideration may consist of benefits other than, or in addition to, money, such as the public benefit which flows from the transfer and the obligations the private actor assumes under the agreement. *See, e.g., Burkhardt v. City of Enid,* 771 P.2d 608, 611 (Okla. 1989) (obligations assumed by private college and direct economic benefits expected to flow from its presence were adequate consideration); *Bryant,* 707 A.2d at 1081 (financial obligations of redeveloper and economic by-products of expected development were adequate consideration). We find support for this approach in Wisconsin case law, but only in the context of nonprofit corporations. *See Rath,* 160 Wis. 2d at 865 (nonprofit hospital's binding commitment to use property for health care is adequate consideration); *State ex rel. State Historical Soc'y v. Carroll,* 261 Wis. 6, 24, 51 N.W.2d 723 (1952) (finding adequate consideration where no cash payment but obligations assumed by nonprofit foundation). We now apply it in the context of this case.

¶ 29. We have already discussed the many benefits inuring to the public under the conveyance

agreement between McKillip and the City. In addition, the agreement makes clear and the record verifies the numerous obligations that have already been fulfilled by McKillip. Under the agreement, McKillip agreed to rehabilitate and upgrade the parking lot. The sum he has invested for that purpose, $60,000, exceeds the assessed value of the lot. These expenditures include: (1) regrading and resurfacing the lot, (2) closing one access driveway and improving the remaining access driveway, (3) constructing curbed green space for visual enhancement, and (4) installing a concrete sidewalk. Most of these expenditures benefit the general public in addition to the users of the parking lot itself.

■■■■

¶ 30. We recognize that it is not this court's function to review the wisdom of actions taken by a city council. *Rath*, 160 Wis. 2d at 863. Our goal is simply to insure that the conveyance serves a direct public purpose and that adequate consideration exists. We conclude that the City has established that the conveyance of the parking lot to McKillip serves primarily the legitimate public purpose of revitalizing a blighted section of downtown Burlington. Although no cash changed hands in the conveyance, we determine that there was no misuse of discretion because the obligations on the part of McKillip and the many benefits accruing to the City from the conveyance sufficed for consideration.

*By the Court.*—Judgment affirmed.