Town of Beloit, Petitioner-Third-Party
Defendant-Appellant,

v.

County of Rock, Respondent-Respondent,

v.

Belle Zyla, Marvin Prothero, and Green-Rock Au-
dubon Society, Intervenors-Third-Party Plaintiffs-
Respondents.†

Court of Appeals

*No. 00–1231. Oral argument February 26, 2001.—Decided
October 25, 2001.*

2001 WI App 256

(Also reported in 637 N.W.2d 71.)

---

† Petition to review granted 1-29-02.

On behalf of the petitioner-third-party defendant-appellant, the cause was submitted on the briefs of and oral argument by *Kenneth W. Forbeck* of *O'Neal, Forbeck, Elliott & Monahan, S.C.*, Beloit.

On behalf of the respondent-respondent, the cause was submitted on the briefs of and oral argument by *Eugene R. Dumas*, Rock County deputy corporation counsel, Janesville.

On behalf of the intervenors-third-party plaintiffs-respondents, the cause was submitted on the briefs of

and oral argument by *Joseph R. Cincotta* of *Schweitzer & Cincotta LLP*, Milwaukee.

Before Vergeront, P.J., Roggensack and Lundsten, JJ.

¶ 1. LUNDSTEN, J. The Town of Beloit commenced this action in the circuit court when it filed a petition for a writ of certiorari complaining that the respondent, County of Rock, lacked authority to impose certain conditions on the Town's proposed subdivision plat. While this certiorari action was pending in the circuit court, Belle Zyla, Marvin Prothero, and the Green-Rock Audubon Society (collectively Intervenors) filed a motion to intervene and a complaint for declaratory judgment on the basis that the Town exceeded its authority in both preparing and approving the subdivision plat and in developing the subdivision without a public purpose. The circuit court denied the Town's motion for summary judgment against the Intervenors and instead issued summary judgment in favor of the Intervenors. For the following reasons, we reverse the decision granting summary judgment in favor of the Intervenors, grant summary judgment against the Intervenors, and remand for further proceedings.

### Background

¶ 2. The parties stipulated to the following facts. The Town currently owns a 20.4 acre parcel of land located in the Town of Beloit, Rock County, along the Rock River. The parcel is known as the "Heron Bay Lands." The Heron Bay Lands have been open to and used by members of the public for recreation.

¶ 3. In 1997, the Town approved a "Master Plan" for the Heron Bay Lands, zoning it for single-family residential housing. At a subsequent Board of Supervi-

sors meeting, the Town authorized and approved the expenditure of Town tax revenues for planning and platting services to develop the land. The Town then authorized an engineering firm to produce a plan to develop the Heron Bay Lands into a thirty-six-lot, single-family residential subdivision and to submit the plan to the State of Wisconsin. The Town also authorized the bidding of contracts necessary for engineering and construction of the infrastructure.

¶ 4. Ultimately, the Town considered and approved a preliminary plat for the subdivision. The preliminary plat was forwarded to Rock County for its review and approval. After Rock County's initial review, the subdivision was reduced from thirty-six lots to twenty-four lots. Rock County then conditionally approved the twenty-four-lot preliminary plat subject to various conditions, including that Rock County retain a 300-foot-wide strip of land commencing on the bank of the Rock River and extending the entire eastern border of the property.

¶ 5. The Town's Planning Commission then took up review of the preliminary plat. There was some discussion during this time regarding the environmental sensitivity of the land and the measures taken to preserve an oak savanna within the Heron Bay Lands. Although the Town's Board of Supervisors ultimately approved the twenty-four-lot preliminary plat, the Town filed a petition for writ of certiorari in May of 1999, seeking to reverse Rock County's conditional approval in some respects.

¶ 6. After the filing of the petition, the Town authorized the expenditure of over $600,000 in Town tax revenues for the development and construction of waste and sewerage piping with the intent that it serve

both the future Heron Bay Lands subdivision and over 1500 additional acres of land in the area.

¶ 7. All of the above facts were agreed to by stipulation.

¶ 8. In July of 1999, the Intervenors filed their motion to intervene and a complaint for declaratory judgment. In the complaint, the Intervenors sought a declaration that the Town exceeded its authority by both preparing and approving the subdivision. The Intervenors sought to have the plat declared void and to have the Town enjoined from taking any further action inconsistent with its responsibility to act with a public purpose. The circuit court granted the motion to intervene.

¶ 9. The Town then filed a motion for summary judgment. In its brief in support of the motion and an attached affidavit, the Town asserted that, prior to hiring its own engineering firm to plat the property, it sought proposals from private builders. However, the Town found all submitted proposals to be unacceptable. Accordingly, the Town argued, it was proper for the Town to develop its own land as a means of increasing the Town's tax base and controlling orderly expansion of the area. Additionally, by creating and enforcing a 300–foot conservation easement along the Rock River, the Town asserted it was acting to protect and preserve an environmentally sensitive area. Finally, the Town alleged that it did not act improperly in reviewing its own subdivision proposal because it complied with all of the requirements of Wis. Stat. ch. 236 by submitting its proposal to all appropriate political bodies.

¶ 10. The Intervenors and Rock County filed briefs in opposition to the Town's motion. The circuit court denied the Town's motion for summary judgment. After concluding as a matter of law that the Town did

not act with a public purpose in developing the Heron Bay Lands, the court granted summary judgment in favor of the Intervenors on their complaint for declaratory judgment pursuant to WIS. STAT. § 802.08(6) (1997–98),[1] which allows a court to award summary judgment to an opposing party even if that party has not sought summary judgment. The Town appeals.

## *Discussion*

¶ 11. The issue before this court is whether the circuit court erred when it denied the Town's motion for summary judgment, granted summary judgment in favor of the Intervenors, and enjoined the Town from further acting as a developer of the Heron Bay Lands.

¶ 12. This court reviews summary judgment decisions *de novo,* applying the same standards as the trial court. *Smith v. Dodgeville Mut. Ins. Co.,* 212 Wis. 2d 226, 232, 568 N.W.2d 31 (Ct. App. 1997). A party is entitled to summary judgment when there are no genuine issues of material fact and that party is entitled to judgment as a matter of law. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987).

---

[1] WISCONSIN STAT. § 802.08(6) provides as follows: "If it shall appear to the court that the party against whom a motion for summary judgment is asserted is entitled to a summary judgment, the summary judgment may be awarded to such party even though the party has not moved therefor." All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

## A. *The Town's General Authority to Act as a "Subdivider"*

¶ 13. Towns are creatures of the legislature, and thus have only the powers expressly delegated to them by statute and such other powers as are necessary to implement the powers expressly granted. *Haug v. Wallace Lake Sanitary Dist.,* 130 Wis. 2d 347, 351, 387 N.W.2d 133 (Ct. App. 1986). Accordingly, we first turn our attention to an examination of whether the Town of Beloit had statutory authority to develop the Heron Bay Lands.

¶ 14. The Town has adopted what are known as village powers pursuant to Wis. Stat. §§ 60.10(2)(c) and 60.22(3). The Town contends that it has authority to act as a "subdivider" of property pursuant to the general powers granted a village in Wis. Stat. § 61.34(1) and (5). Additionally, the Town asserts that § 61.34(3) specifically grants it the power to sell real estate it owns because that statute says a village may "acquire property, real or personal," and may "sell and convey such property."[2]

---

[2] Wisconsin Stat. § 61.34 provides in full:

(1) GENERAL GRANT. Except as otherwise provided by law, the village board shall have the management and control of the village property, finances, highways, streets, navigable waters, and the public service, and shall have power to act for the government and good order of the village, for its commercial benefit and for the health, safety, welfare and convenience of the public, and may carry its powers into effect by license, regulation, suppression, borrowing, taxation, special assessment, appropriation, fine, imprisonment, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants and shall be limited only by express language.

(2) COOPERATION WITH OTHER MUNICIPALITIES. The village board, in behalf of the village, may join with other villages

or cities in a cooperative arrangement for executing any power or duty in order to attain greater economy or efficiency, including joint employment of appointive officers and employes.

(3) ACQUISITION AND DISPOSAL OF PROPERTY. The village board may acquire property, real or personal, within or outside the village, for parks, libraries, recreation, beautification, streets, water systems, sewage or waste disposal, harbors, improvement of watercourses, public grounds, vehicle parking areas, and for any other public purpose; may acquire real property within or contiguous to the village, by means other than condemnation, for industrial sites; may improve and beautify the same; may construct, own, lease and maintain buildings on such property for instruction, recreation, amusement and other public purposes; and may sell and convey such property. Condemnation shall be as provided by ch. 32.

(3m) ACQUISITION OF EASEMENTS AND PROPERTY RIGHTS. Confirming all powers granted to the village board and in furtherance thereof, the board is expressly authorized to acquire by gift, purchase or condemnation under ch. 32 any and all property rights in lands or waters, including rights of access and use, negative or positive easements, restrictive covenants, covenants running with the land, scenic easements and any rights for use of property of any nature whatsoever, however denominated, which may be lawfully acquired for the benefit of the public or for any public purpose, including the exercise of powers granted under ss. 61.35 and 62.23; and may sell and convey such easements or property rights when no longer needed for public use or protection.

(4) VILLAGE FINANCES. The village board may levy and provide for the collection of taxes and special assessments; may refund any tax or special assessment paid, or any part thereof, when satisfied that the same was unjust or illegal; and generally may manage the village finances. The village board may loan money to any school district located within the village or within which the village is wholly or partially located in such sums as are needed by such district to meet the immediate expenses of operating the schools thereof, and the board of the district may borrow money from such village accordingly and give its note therefor. No such loan shall be made to extend beyond August 30 next following the making thereof or in an amount exceeding one-half of the

97

subdivider under the general powers granted to a village in WIS. STAT. § 61.34(1), (3) and (5). We think this implicit concession is appropriate. Section 61.34(1) states that a village's enumerated powers are limited only by express language. Accordingly, the Town has authority to act as a subdivider for the public benefit under subsections (1), (3) and (5) of § 61.34, so long as it is not specifically prohibited from doing so by some other rule of law.

¶ 16. Still, the Intervenors and Rock County argue that the Town may not assume the dual role of subdivider and reviewer of a proposed plat under WIS. STAT. ch. 236. They also argue that the Town's actions are prohibited by the public purpose doctrine of the state constitution. We now address these arguments.

### B. The Town Was Not Prohibited by WIS. STAT. Ch. 236 From Both Proposing and Reviewing the Subdivision Plat

¶ 17. Rock County very generally argues that a town which has adopted local subdivision regulations pursuant to WIS. STAT. § 236.45(1) engages in a conflict of interest by thereafter acting as a real estate devel-

estimated receipts for such district as certified by the state superintendent of public instruction and the local school clerk. The rate of interest on any such loan shall be determined by the village board.

(5) CONSTRUCTION OF POWERS. For the purpose of giving to villages the largest measure of self-government in accordance with the spirit of article XI, section 3, of the constitution it is hereby declared that this chapter shall be liberally construed in favor of the rights, powers and privileges of villages to promote the general welfare, peace, good order and prosperity of such villages and the inhabitants thereof.

oper within its own jurisdiction.[3] Similarly, the Intervenors suggest that language in WIS. STAT. § 236.13(2)(a) and (c) indicates that a town may not act as both subdivider and the approving authority of a proposed plat because those subsections refer to "subdivider" as a separate entity from either a "governing body" or a "town."[4] However, nothing in WIS. STAT. ch. 236 specifically prohibits a town from subdividing land it owns. As

---

[3] WISCONSIN STAT. § 236.45(1) states as follows:

DECLARATION OF LEGISLATIVE INTENT. The purpose of this section is to promote the public health, safety and general welfare of the community and the regulations authorized to be made are designed to lessen congestion in the streets and highways; to further the orderly layout and use of land; tó secure safety from fire, panic and other dangers; to provide adequate light and air, including access to sunlight for solar collectors and to wind for wind energy systems; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate adequate provision for transportation, water, sewerage, schools, parks, playgrounds and other public requirements; to facilitate the further resubdivision of larger tracts into smaller parcels of land. The regulations provided for by this section shall be made with reasonable consideration, among other things, of the character of the municipality, town or county with a view of conserving the value of the buildings placed upon land, providing the best possible environment for human habitation, and for encouraging the most appropriate use of land throughout the municipality, town or county.

[4] WISCONSIN STAT. § 236.13(2) provides in relevant part:

(a) As a further condition of approval, the governing body of the town or municipality within which the subdivision lies may require that the subdivider make and install any public improvements reasonably necessary or that the subdivider execute a surety bond or provide other security to ensure that he or she will make those improvements within a reasonable time.

. . . .

(c) Any county, town, city or village may require as a condition of approval that the subdivider be responsible for the cost of any

99

noted, a town's general powers to act for the good order of the town, for its commercial benefit, and for the health, safety, welfare and convenience of the public are to be limited only by express language. WIS. STAT. § 61.34(1).

¶ 18. Moreover, a review of statutory law leads us to conclude that the legislature has considered and approved of municipal bodies acting in the dual role of subdivider and reviewing authority. In an attempt to encourage and promote the development of industry, the legislature enacted WIS. STAT. § 66.1101 (1999–2000).[5]

necessary alterations of any existing utilities which, by virtue of the platting or certified survey map, fall within the public right-of-way.

[5] WISCONSIN STAT. § 66.1101 (1999–2000) provides in full:

**Promotion of industry; industrial sites. (1)** It is declared to be the policy of the state to encourage and promote the development of industry to provide greater employment opportunities and to broaden the state's tax base to relieve the tax burden of residents and home owners. It is recognized that the availability of suitable sites is a prime factor in influencing the location of industry but that existing available sites may be encroached upon by the development of other uses unless protected from encroachment by purchase and reservation. It is further recognized that cities, villages and towns have broad power to act for the commercial benefit and the health, safety and public welfare of the public. However, to implement that power, legislation authorizing borrowing is necessary. It is, therefore, the policy of the state to authorize cities, villages and towns to borrow for the reservation and development of industrial sites, and the expenditure of funds for that purpose is determined to be a public purpose.

**(2)** For financing purposes, the purchase, reservation and development of industrial sites undertaken by a city, village or town is a public utility within the meaning of s. 66.0621. In financing under that section, rentals and fees are considered to be revenue. Any indebtedness created under this section shall not be included in arriving at the constitutional debt limitation.

100

Under § 66.1101(3) (1999–2000), cities, villages, and towns may develop industrial sites through the installation of utilities and roadways and may sell those sites. These actions necessarily require municipalities to plat property and act as subdividers, thereby subjecting municipalities to the platting procedures of WIS. STAT. ch. 236. Accordingly, we conclude that the legislature envisioned and approved of municipalities acting as both subdivider and approver of a proposed plat.

¶ 19. Finally, affidavits submitted by the Town indicate that it was required to and did submit its plat proposal to not only the Town's Planning Commission, a separate entity from the Town's Board of Supervisors, but also to the State of Wisconsin, the City of Beloit Plan Commission, and the Rock County Planning and Development Agency. Accordingly, we are less concerned here with a possible conflict of interest than we would be if the Town were the sole reviewing body. Indeed, neither the Intervenors nor Rock County suggests that the State of Wisconsin in approving the plat, or the City of Beloit or Rock County in conditionally approving the plat, acted improperly.

## C. The Town Acted with a Public Purpose

¶ 20. We now consider whether the Town violated the public purpose doctrine by expending public funds for a private purpose.

(3) Sites purchased for industrial development under this section or under any other authority may be developed by the city, village or town by the installation of utilities and roadways but not by the construction of buildings or structures. The sites may be sold or leased for industrial purposes but only for a fair consideration to be determined by the governing body.

101

¶ 21. Under the public purpose doctrine, public funds may be expended only for public purposes. *State ex rel. Warren v. Nusbaum*, 59 Wis. 2d 391, 414, 208 N.W.2d 780 (1973). Although no specific clause in the state constitution establishes the public purpose doctrine, it is a well-established constitutional tenet. *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis. 2d 32, 47–48, 205 N.W.2d 784 (1973).

¶ 22. What constitutes a public purpose is generally for a legislative body to determine and " 'courts will not interfere unless at first blush the act appears to be so obviously designed in all its principal parts to benefit private persons and so indirectly or remotely to affect the public interest that it constitutes the taking of property of the taxpayers for private use.' " *See State ex rel. Bowman v. Barczak*, 34 Wis. 2d 57, 64, 148 N.W.2d 683 (1967), quoting *State ex rel. Wisconsin Dev. Auth. v. Dammann*, 228 Wis. 147, 182, 277 N.W. 278, 280 N.W. 698 (1938).

> [The] opinion [of a legislative body] should be given great weight. If any public purpose can be conceived which might rationally justify the expenditure, the constitutional test is satisfied. We will conclude that no public purpose exists only if it is clear and palpable that there can be no benefit to the public.

*Bishop v. City of Burlington*, 2001 WI App 154, ¶ 11, 246 Wis. 2d 879, 631 N.W.2d 656 (citations omitted).

¶ 23. There is no single test used to determine whether an expenditure of funds is for a public purpose.

> The essence of the doctrine, that public funds may be expended only for public purposes, rests on the theory

that governmental power should be used for the benefit of the entire community. To maintain a public purpose, the benefit to the public must be direct and not remote. The fact that a private entity receives direct benefit from an expenditure of public funds does not render the expenditure unconstitutional. If the principal parts of the expenditure are designed to promote a public purpose, private benefits which are necessary and reasonable to the main purpose are permissible.

*Id.* at ¶ 10 (citations omitted). Courts have considered whether the subject matter or commodity of the expenditure is one of "public necessity, convenience or welfare," as well as the difficulty private individuals have in providing the benefit for themselves. *Hammermill*, 58 Wis. 2d at 56 (citation omitted).

¶ 24. With these factors in mind, we turn now to an examination of the facts in this case.

¶ 25. The Town argues that WIS. STAT. § 61.34(3) specifically provides it with the authority to sell property it owns, regardless whether it acts with a public purpose. However, at a minimum, the public purpose doctrine applies whenever a governmental entity expends funds and the "sale" in this case involved significant expenditures by the Town. Furthermore, we agree with the Intervenors and Rock County that the Town is doing more than simply selling its property. Indeed, the Town readily admits it has and will expend significant tax revenues on its efforts to develop the Heron Bay Lands subdivision. Therefore, we now consider whether the Town is acting with a public purpose.

¶ 26. The concept of public purpose is not a static one. The trend by both legislatures and courts has been to extend the concept of public purpose in consideration of "the demands upon municipal governments to pro-

vide for the needs of the citizens." *Hammermill*, 58 Wis. 2d at 55–56. The Town has repeatedly suggested that its development of the Heron Bay Lands will promote orderly development of the area, will increase the tax base, and will likely result in a profit to the Town.[6] These considerations are comparable to those previously found by Wisconsin courts to constitute a public purpose.

¶ 27. For instance, in *Alexander v. City of Madison*, 2001 WI App 208, ¶¶ 9–10, 247 Wis. 2d 576, 634 N.W.2d 577, a city's expenditure of funds to increase the tax base and generally enhance the economic climate of the community was for a public purpose. In *Bishop*, 2001 WI App 154 at ¶¶ 21–23, a city acted with a public purpose when it transferred a parking lot to a private developer to promote the rehabilitation of a downtown area, even though the parking lot could be used solely for a single private entity after three years. The supreme court has also determined that attempts to preserve and enhance the tax base of counties, cities, and other local governmental jurisdictions, as well as attempts to bring in capital to the community, are public purposes for the expenditure of public funds. *See Hammermill*, 58 Wis. 2d at 49–50; *Libertarian Party of*

---

[6] The Town also asserts it has acted with a public purpose in creating a 300–foot-wide conservation easement along the Rock River. While an affidavit submitted by the Town indicates that the Town is in the process of drafting the conservation easement, the Town objected in its petition for a writ of certiorari to Rock County's conditional approval requiring the Town to dedicate the same strip of land as a "park and open space" to Rock County. Because there seems to be a factual dispute regarding whether the Town will voluntarily create such an easement, we decline to consider whether the easement is an additional public purpose.

*Wisconsin v. State*, 199 Wis. 2d 790, 810, 546 N.W.2d 424 (1996). The fact that private individuals, by purchasing the subdivision plats, will ultimately benefit from the Town's development does not vitiate the public benefits derived from the development itself. *See Libertarian Party*, 199 Wis. 2d at 810.

¶ 28. Citing *Heimerl v. Ozaukee County*, 256 Wis. 151, 40 N.W.2d 564 (1949), the Intervenors suggest that the Town may not engage in business in competition with private developers. There is nothing in *Heimerl*, however, to suggest that municipalities may never engage in traditionally private business in competition with the private sector. Rather, in that case, the court found that no public purpose was satisfied by Ozaukee County's expenditure of public funds to construct private driveways. *Id.* at 153, 158. The Intervenors do not direct our attention to any authority other than *Heimerl*, and we find no statute or case law supporting the Intervenors' contention.

¶ 29. Having determined that the Town's expenditure of tax revenues to develop the Heron Bay Lands serves a public purpose, we reverse the circuit court's grant of summary judgment in favor of the Intervenors and grant the Town's motion for summary judgment. Because the Town's petition for a writ of certiorari is no longer moot, we remand this matter to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.