COURT OF APPEALS
DECISION
DATED AND FILED

August 2, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1068-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CF263

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

KEVIN LEE WILKE,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Brown County: TIMOTHY A. HINKFUSS, Judge. *Affirmed*.

¶1 STARK, J.[1] Kevin Lee Wilke, pro se, appeals from a judgment, entered after a jury trial, convicting him of three crimes and from an order denying his requests for postconviction relief. For the reasons that follow, we affirm.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

## BACKGROUND

¶2      On February 26, 2019, the Ashwaubenon Department of Public Safety responded to the home of Nora[2] for a report of a "physical disturbance" between a male and female. Nora and Wilke were identified as the subjects of the report. After an investigation, Wilke was arrested. The State charged Wilke in a four-count Information with strangulation and suffocation, battery, disorderly conduct, and intimidation of a victim, all counts as a repeater.

¶3      Early in the proceedings, Wilke elected to waive his right to be represented by counsel and proceed pro se.[3] After a two-day jury trial, the jury found Wilke guilty of the misdemeanor counts of battery, disorderly conduct, and intimidation of a victim, all counts as a repeater, but it acquitted Wilke of the felony count of strangulation and suffocation. The circuit court sentenced Wilke to one year of initial confinement followed by one year of extended supervision on both the battery and intimidation of a victim counts, to run consecutively to each other. On the disorderly conduct count, the court sentenced Wilke to one year in jail, concurrent to his sentences on the other counts.

¶4      After sentencing, Wilke filed a number of motions for postconviction relief. The circuit court denied these motions without a hearing. As pertinent to Wilke's arguments on appeal, the court denied Wilke's motion to dismiss and for a new trial and sentencing, concluding that "the evidence

---

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86, we use a pseudonym when referring to the victim and also omit other personally identifying details.

[3] Wilke does not challenge his waiver of counsel on appeal.

presented at trial was sufficient to support the jury's verdict." Wilke appeals. We reference additional facts as needed below.

## DISCUSSION

¶5     Wilke makes several arguments on appeal, which we have distilled into three main issues: (1) the State violated WIS. STAT. § 971.23 by failing to timely provide Wilke with discovery; (2) Wilke was denied his right to confrontation at trial; and (3) the State failed to present sufficient evidence to convict him.

¶6     First, Wilke claims the State violated WIS. STAT. § 971.23(1) and (7m)(a)-(b) by failing to timely provide discovery to him. Wilke argues that the State has a "responsibility and duty … to give [him] full discovery and [a] witness list with time to prep for trial and to disclose any and all evidence or testimony relevant to any evidence being introduced [at] trial before its introduction[.]" According to Wilke, "[f]ull discovery" was provided to him the "night before trial" with "no time to 'prep.'"

¶7     In response, the State first argues that Wilke has forfeited this issue, as it was not properly preserved during trial or raised in a postconviction motion. "Forfeiture occurs when a party fails to raise an objection." *State v. Mercado*, 2021 WI 2, ¶35, 395 Wis. 2d 296, 953 N.W.2d 337. "It is a fundamental principle of appellate review that issues must be preserved at the circuit court. Issues that are not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal." *State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727. Wilke claims that he "did bring these issues up before trial," but our review of the record suggests that the court did not perceive that his arguments were alleging a discovery violation or seeking a trial

3

continuance, as his arguments focused on the sufficiency of the evidence. *See Bishop v. City of Burlington*, 2001 WI App 154, ¶8, 246 Wis. 2d 879, 631 N.W.2d 656 ("A litigant must raise an issue with sufficient prominence such that the [circuit] court understands that it is being called upon to make a ruling."). Further, there is no dispute that Wilke failed to raise this issue in a postconviction motion.

¶8     While we could find that Wilke forfeited this issue, we need not decide this question, as we have the authority to disregard a forfeiture and address an allegedly forfeited claim on the merits. *See State v. Erickson*, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999). We choose to do so here, and, addressing the merits, we conclude that the State complied with WIS. STAT. § 971.23[4] and provided Wilke with discovery materials within a reasonable time before trial.

¶9     The State argued before the circuit court and now before this court that it had provided "all of the discovery … from very early on in this case." Wilke does not argue otherwise. Instead, he focuses on the fact that the State provided him with duplicate discovery materials the day before trial. During the pendency of these proceedings, Wilke was released on bond, but his bond was later revoked. Wilke then filed several motions seeking release after his bond revocation, claiming, among other things, that he was unable to access the case discovery and prepare for trial because he was incarcerated and his materials were at home. At trial, the State explained,

---

[4] The State's discovery obligation in a criminal case is governed by WIS. STAT. § 971.23(1), which provides that the State must disclose or allow review of evidence listed under § 971.23(1)(a)-(h) "within a reasonable time before trial."

> I just want to make it very clear for the record Mr. Wilke has had all of the discovery from the [S]tate from very early on in this case. And we gave him a second complete copy after the final pretrial when he made a record at the pretrial that he didn't have all of his papers because some of them were at his house. Out of an abundance of caution we made an identical copy of all of the discovery and gave it to Mr. Wilke so that he would have absolutely everything he would need for court.

Accordingly, we conclude that the State timely provided Wilke with all the discovery materials and did not violate WIS. STAT. § 971.23. Therefore, there is no basis to provide Wilke with relief on these grounds.

¶10 Wilke next argues that his right to confrontation was violated because he was unprepared to cross-examine Nora, the State's witness and the victim, as he did not know she would testify that she did not remember the events of the date in question. On direct examination, when Nora was asked if she "remember[ed] an incident" with Wilke on February 26, 2019, Nora first stated that she did not. She did, however, testify that she "vaguely" remembered speaking with a police officer. When asked whether a statement that was shown to her while testifying looked like one she gave to police, Nora stated, "It looks like it, yes." She further acknowledged her signature at the bottom of the statement and ultimately admitted giving the police a statement, explaining, "I know I gave the statement to the officers because I did read it." Nora then testified about the details of the incident, but her testimony was based upon the information she provided to the officer in her statement.

¶11 At trial, Wilke objected to Nora's testimony, stating, "If she don't remember the night[,] I don't know how to deal with that." On appeal, Wilke argues that he was denied the "right to confront credibility and mental issues" because Nora stated she did not remember giving a statement until after it was

read to her and that he was "surprise[d]" because he "was not informed [that the] only true witness did not remember [the] incident."

¶12    "The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him [or her].'" ***Delaware v. Van Arsdall***, 475 U.S. 673, 678 (1986). "[T]he fundamental inquiry in deciding whether the right of confrontation was violated is whether the defendant had the *opportunity* for effective cross-examination." ***State v. Hoover***, 2003 WI App 117, ¶21, 265 Wis. 2d 607, 666 N.W.2d 74. "[T]he question of whether a defendant's right to confrontation has been violated is one of constitutional fact, subject to independent appellate review." ***State v. Stuart***, 2003 WI 73, ¶21, 262 Wis. 2d 620, 664 N.W.2d 82.

¶13    Here, the record demonstrates that Wilke had a full opportunity to effectively cross-examine Nora during the trial.  First, to the extent that Wilke argues the State violated his right to confrontation by failing to advise him that Nora did not recall the events at issue, Wilke provides no legal basis for his claim that the State was required to advise him of that information.  Further, he has not identified any evidence showing that the State was actually aware prior to trial that Nora would testify she did not recall the incident.[5]  As the State explained, "the reality of litigation is that while parties may anticipate how any given witness may testify, it is part of the nature of testimony of live witnesses that unexpected things may happen during the course of a trial."

---

[5] Based on Nora's testimony, it was established that she did not want to testify in this case, and she only attended the trial because she had been subpoenaed.  Later, at sentencing, she provided a victim impact statement indicating her belief that Wilke "manipulated and intimidated" her.

¶14    Next, we conclude that Wilke had a sufficient opportunity for effective cross-examination. Nora testified during the State's case-in-chief, Wilke extensively cross-examined her, and she was later recalled by Wilke over the State's objection. Wilke specifically asked Nora, during his case-in-chief, if he had "ever put [his] hands around [her] neck" or if he "ever tried to strangle [her] in any way, shape or form?" She responded, "No," to both questions. During Wilke's questioning, Nora admitted to drinking on the date of the incident and in general. Wilke also elicited testimony from Nora that she was using medications at the time of the incident, and she suffered from "adverse effects" on her "emotional state," including anger, blackouts, and self-harm. Thus, Wilke not only had the opportunity to cross-examine Nora, but he was able to effectively do so by eliciting testimony addressing Nora's credibility.

¶15    Wilke has not demonstrated how he was prevented from conducting a full cross-examination of Nora or what evidence he sought to introduce that he was unable to produce through that examination. Our review of the record demonstrates that the circuit court provided Wilke leeway in asking questions, and it often overruled the State's objections to Wilke's questions. Further, any alleged "surprise" suffered by Wilke on the first day of trial was rectified when he was able to recall Nora to testify on the second day. Accordingly, on this record, we conclude that Wilke was not denied his right to confrontation; instead, the record shows that Wilke exercised that right.

¶16    Finally, Wilke's remaining arguments can be classified under the umbrella of a challenge to the sufficiency of the evidence to support the jury's verdicts. Wilke's defense is that he was at home "asleep in [his] bed" at the time of the incident. He argues that (1) Nora's testimony was insufficient to support his conviction, as she testified that she did not remember the incident; (2) there was

no physical evidence linking him to the incident; and (3) the officers' testimony was inconsistent, and it was a "[b]otched investigation."

¶17    When reviewing a jury's verdicts, our review of the evidence is in the light most favorable to the State and the verdicts. *See **State v. Poellinger***, 153 Wis. 2d 493, 500, 504, 451 N.W.2d 752 (1990).  The jury is the sole arbiter of the credibility of witnesses, and it alone is charged with the duty of weighing the evidence. *See **id.*** at 506.  Accordingly, if more than one reasonable inference can be drawn from the evidence, we must accept the inference drawn by the jury. *See **id.*** at 506-07.  "[T]he jury verdict will be overturned only if, viewing the evidence most favorably to the [S]tate and the conviction, it is inherently or patently incredible, or so lacking in probative value that no jury could have found guilt beyond a reasonable doubt."  ***State v. Alles***, 106 Wis. 2d 368, 376-77, 316 N.W.2d 378 (1982) (citation and emphasis omitted).

¶18    In essence, Wilke asks us to second-guess the jury's verdicts and reweigh the evidence in his favor.  Under our standard of review, we cannot do so. Nora's testimony, viewed in the light most favorable to the State, was sufficient to support the verdicts in this case.  Further, nothing in the record would support a determination that Nora's testimony was incredible as a matter of law. *See **Poellinger***, 153 Wis. 2d at 506-07; *see also **State v. King***, 187 Wis. 2d 548, 562, 523 N.W.2d 159 (Ct. App. 1994) ("Incredible as a matter of law means inherently incredible, such as in conflict with the uniform course of nature or with fully established or conceded facts.").  As noted above, if more than one reasonable inference can be drawn from the evidence, we must accept the inference drawn by the jury.  Therefore, Wilke's belief that Nora's testimony was incredible and his belief that he sufficiently impeached Nora are not factors properly considered on our review.  As to Wilke's claim that there was no physical evidence to support his

convictions, the law does not require that a conviction be supported by physical evidence; circumstantial evidence is sufficient to support a conviction. *See Poellinger*, 153 Wis. 2d at 501. Further, the jury clearly considered the sworn testimony of the witnesses—which *is* evidence—in rendering its verdicts, and it was free to "choose among conflicting inferences of the evidence." *See id.* at 506. We conclude that the evidence presented at trial was sufficient to uphold the jury's findings of guilt on the relevant counts.

     *By the Court.*—Judgment and order affirmed.

     This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.